1 | ALEXANDER B. CVITAN (SBN 81746),
E-mail: alc@rac-law.com
2 | MARSHA M. HAMASAKI (SBN 102720) and
E-mail: marshah@rac-law.com;
3 | PETER A. HUTCHINSON (SBN 225399)
E-mail: peterh@rac-law.com,
4 | REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
5 | Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
6
7 | Attorneys for Plaintiff

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | CONSTRUCTION LABORERS
TRUST FUNDS FOR SOUTHERN
12 | CALIFORNIA ADMINISTRATIVE
COMPANY, a Delaware limited
13 | liability company,

14 | Plaintiff,

15 | v.

16 | NEAL ELECTRIC CORP., a
California corporation doing business
17 | as NEAL ELECTRIC, INC.,

18 | Defendant.

CASE NO.:

**COMPLAINT FOR:**

1. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**

2. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**

[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185]

19

20 | Plaintiff, Construction Laborers Trust Funds for Southern California

21 | Administrative Company, a Delaware limited liability company, alleges:

22

23 | **JURISDICTION AND VENUE**

24

25 | 1. This action is brought by a fiduciary administrator on behalf of

26 | employee benefit plans against an employer. It is brought in accordance with the

27 | terms and conditions of the plans, the collective bargaining agreements to which the

28 | employer is bound and applicable statutes to: (a) recover unpaid monthly employee

381671.1

-1-

fringe benefit contributions, liquidated damages, damages due to the employer's violation of provisions of the agreements, interest and audit fees due to the plans by the employer through enforcement of the terms of the collective bargaining agreements, plan agreements and applicable statutes (Claim 1); and (b) compel the employer to produce records for a complete audit to determine if additional amounts are due (Claim 2).  This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## **PARTIES**

2.     Plaintiff ("ADMINCO") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; Southern California Partnership for Jobs Trust Fund; San Diego County Construction Laborers Pension Trust Fund; and San Diego Construction Advancement Fund 2003 (collectively "TRUST FUNDS").  Each of the TRUST

FUNDS is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  ADMINCO and the TRUST FUNDS' principal places of business are in the County of Los Angeles, State of California.

3.     ADMINCO is a fiduciary as to the TRUST FUNDS, in that it:

A.     Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

B.     Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4.     ADMINCO is informed and believes, and on that basis alleges, that defendant NEAL ELECTRIC CORP., also known and doing business as NEAL ELECTRIC, INC., ("EMPLOYER") is a California corporation organized and existing under the laws of the State of California; has principal place of business in the City of  Vista, County of San Diego, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

/ / /

## AGREEMENTS

5.      The EMPLOYER, as an eligible member of the Associated General Contractors of California, Inc., ("AGC") a multiemployer bargaining association of contractors, became bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated Local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including one known as the Southern California Master Labor Agreement in or about November 29, 2017.  In addition, EMPLOYER executed subscription agreements for work on projects covered by (1) an agreement known as the Los Angeles County Metropolitan Transportation Authority project labor agreement ("LACMTA") in or about June 2017; and (2) an agreement known as the San Diego Unified School District Project Stabilization Agreement Construction and Major Rehabilitation Funded by Proposition S "(SDUSD PSA") initially in August 2013.

6.      Pursuant to the Construction Master Labor Agreements, the LACMTA project labor agreement and the SDUSD PSA, employers become – and the EMPLOYER became – bound to the terms and conditions of the various trust agreements that created each of the TRUST FUNDS ("Trust Agreements").  When referenced collectively hereinafter, the Construction Master Labor Agreements, LACMTA and SDUSD PSA and Trust Agreements are referred to as the "Agreements."

7.      Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the TRUST FUNDS for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

8.      Under the terms of the Agreements, employers, including the EMPLOYER, are required to submit to the TRUST FUNDS, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their

381671.1

employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The TRUST FUNDS rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the TRUST FUNDS by employers and the credit toward fringe benefits to be allocated to their employees.

9.     The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the TRUST FUNDS.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each TRUST FUND separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

10.     The failure of employers to pay Monthly Contributions when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the

TRUST FUNDS, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.   The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages.  In this case, they have exercised their discretion by declining to waive any liquidated damages.

11.     Under the terms of the Agreements, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed.  If an employer subcontracts Covered Work to a non-signatory entity ("Subcontracting Violation(s)"), the employer becomes liable for damages to the TRUST FUNDS in an amount equal to the Monthly Contribution that would have been due if the entity had been signatory, plus interest, liquidated damages and audit fees thereon.

12.     Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the TRUST FUNDS.  If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the TRUST FUNDS for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors, plus interest and audit fees thereon.

13.     The Agreements provide the TRUST FUNDS with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the TRUST FUNDS, and/or to determine whether the employers, including EMPLOYER are in compliance with the reporting and payment obligations of the Agreements.  The Agreements further provide that employers, including the EMPLOYER, must maintain records sufficient for the TRUST FUNDS to verify proper Monthly

Reporting, and its compliance with the reporting and payment obligations of the Agreements, and, where there has been inaccurate Monthly Reporting, or other violations of the provisions of the Agreements, to determine the additional amounts due, and that the employer must pay the TRUST FUNDS' audit fees if it is delinquent to the TRUST FUNDS.  The TRUST FUNDS have delegated the authority to perform such audits to ADMINCO.

14.    The Agreements require employers to pay the TRUST FUNDS' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## FIRST CLAIM FOR RELIEF
### (For Monetary Damages Due to Employee Benefit Plans)

15.    ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 14 above as if fully set forth here.

16.    As a result of EMPLOYER'S failure to pay the rates specified in the Agreements and its failure to comply with the subcontracting provisions of the Agreements, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to the TRUST FUNDS from EMPLOYER, during the period from July 1, 2017 to August 31, 2018, damages in the sum of at least $92,548.26 consisting of $68,076.27 in unpaid Monthly Contributions, $13,605.07 in liquidated damages, $1,280.00 in audit fees; and $9,586.52 in interest on the late and/or unpaid Monthly Contributions owed to the TRUST FUNDS through March 17, 2020, ("Known Delinquency"), plus additional accrued interest at the plan rate(s), currently 5.25% per annum, until payment is made,  as well as any additional Monthly Contributions, liquidated damages, Subcontracting Violation(s), audit fees and interest on the additional amounts owed at the plan rate(s) according to proof at the time of trial or other hearing. The amounts owed by EMPLOYER were not

381671.1

-7-

discovered until the audit of EMPLOYER'S records was concluded in March 2019; therefore, the time within which to proceed with legal action to recover the amounts owed commenced at that time.

17. ADMINCO will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the TRUST FUNDS by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors). If deemed necessary by the Court, ADMINCO will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the TRUST FUNDS have been met.

18. It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit Monthly Contributions and/or damages against EMPLOYER, then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

19. Under the terms of the Agreements and Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent Monthly Contributions but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

/ / /

### SECOND CLAIM FOR RELIEF

**(For Specific Performance of Obligation to Produce Records for Audit)**

20.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 above as if fully set forth here.

21.     ADMINCO requested that the EMPLOYER produce its books and records for audit covering the period from July 1, 2017 to the date of the audit.  The EMPLOYER has partially complied with ADMINCO's request but has not fully produced its books and records for audit.  ADMINCO requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for ADMINCO to complete an audit to determine if additional amounts are due.

22.     An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

**WHEREFORE, ADMINCO prays for judgment as follows:**

### ON ADMINCO'S FIRST CLAIM FOR RELIEF

**[For Monetary Damages Due to Employee Benefit Plans]**

A.     For $68,076.27 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B.     For $9,586.52 in interest through March 17, 2020 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest accrued thereafter as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C.     For $13,605.07 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the TRUST FUNDS separately, the greater of 20% or

$25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D.      For $1,280.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E.      For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, fees incurred by the TRUST FUNDS as a result of the submission of checks not honored by the bank upon which they were drawn, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 29 U.S.C. §§ 1132(a)(3)(B), 1132 (g)(2), and 1145.

F.      For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

G.      For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON ADMINCO'S SECOND CLAIM FOR RELIEF

### [For Specific Performance of Obligation to Produce Records for Audit]

A.      For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records from at least July 1, 2017 to the date of the audit, fully cooperate with ADMINCO with respect to the audit in order for ADMINCO to determine the total amount due to the TRUST FUNDS by the EMPLOYER, and, specifically, to produce to ADMINCO the following payroll and business records – and any other records determined by ADMINCO to be necessary to conduct a full

1   audit – for inspection, examination and copying:

2       A.1.   All of the EMPLOYER's payroll and employee records, as well as

3   any other records that might be relevant to a determination of the work performed by

4   the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and

5   the employees of the EMPLOYER's subcontractors and lower-tier subcontractors,

6   including but not limited to payroll journals, employee earnings records, certified

7   payroll records, payroll check books and stubs, cancelled payroll checks, payroll time

8   cards and state and federal tax returns (and all other state and federal tax records), as

9   well as labor distribution journals and any other records that might be relevant to an

10  identification of the employees who performed work for the EMPLOYER, its

11  subcontractors or lower-tier subcontractors, or which might be relevant to a

12  determination of the projects on which the EMPLOYER, its employees, its

13  subcontractors, lower-tier subcontractors or the employees of its subcontractors or

14  lower-tier subcontractors performed work, including any records that provide the

15  names, addresses, Social Security numbers, job classification or the number of hours

16  worked by any one or more employee;

17      A.2.   All of the EMPLOYER's job files for each contract, project or job

18  on which the EMPLOYER, its employees, its subcontractors, its lower-tier

19  subcontractors or the employees of its subcontractors or lower-tier subcontractors

20  worked, including but not limited to all correspondence, agreements and contracts

21  between the EMPLOYER and any general contractor, subcontractor, owner, builder

22  or developer, as well as all field records, job records, notices, project logs,

23  supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and

24  any other records that relate to the supervision of the EMPLOYER's employees, its

25  subcontractors, its lower-tier subcontractors or the employees of its subcontractors

26  and lower-tier subcontractors, or the projects on which the EMPLOYER, its

27  employees, its subcontractors, its lower-tier subcontractors or the employees of its

28  subcontractors or lower-tier subcontractors performed work;

A.3.   All of the EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

A.4.   All of the EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

A.5.   All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

A.6.   All collective bargaining agreements between the EMPLOYER and any trade union, and all records of contributions by the EMPLOYER to any trade union trust fund; and

A.7.   All records related to the formation, licensing, renewal or operation of the EMPLOYER.

B.   For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

C.   For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

Alexander B. Cvitan,
Marsha M. Hamasaki and
Peter A. Hutchinson of
REICH, ADELL & CVITAN
A Professional Law Corporation

DATED:  March 18, 2020          By:   /s/ MARSHA M. HAMASAKI
                                       MARSHA M. HAMASAKI
                                       Attorneys for Plaintiff

381671.1                              -12-